IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MARTINA RIVERA-RIVERA,

    Plaintiff,

            v.                                Civil No. 13-1889 (SEC)

MEDINA & MEDINA, INC.

    Defendant.

## OPINION AND ORDER

Pending before the Court is Defendant's motion for summary judgment. Because the elements necessary to support Plaintiff's claims are supported only with inadmissible hearsay and conclusory allegations included in her affidavit, the motion is **granted**.

### I.    Factual and Procedural Background

At forty-six years of age, Martina Rivera started working for Medina & Medina, Inc. (Defendant or Medina). Rivera's tenure began in 2006 and she received salary increases in 2008, 2009, and 2013. Every year, except for the year she resigned, Rivera received a discretionary "gratification bonus" given to employees that complied with certain criteria, in addition to the Christmas bonus required by law. Docket # 44, ¶¶ 9-13.[1]

Seven years after she was hired, on August 20, 2013, Rivera filed a charge before the Equal Employment Opportunity Commission (EEOC) alleging that Medina's top officers had engaged in a campaign of discrimination against her based

---

[1] Rivera alleges that the gratification bonus was a gift that Pepín Medina—one of Medina's owners—gave to some employees at the end of the year based on his personal criteria. Docket # 49-1, ¶ 11. This distinction, however, is immaterial and supported only by inadmissible hearsay.

on her age, sex, and opposition to Medina's discriminatory practices. On September 2013, the EEOC issued a notice of right to sue and Rivera submitted her resignation on November 1. A month later, Rivera filed this federal employment action seeking redress for discrimination and retaliation under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.*, and Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.* (Title VII). She also brought supplemental claims under Puerto Rico law.

Rivera alleges that, from June 2011 until her resignation in November 2013, she was subjected to a hostile work environment by Medina's top officers. She posits that, "on a daily basis," her supervisors made derogatory comments regarding her age and gender; screamed and insulted her up to the point that she felt physically threatened; and falsely accused her of engaging in a fraud scheme involving illegal appropriation of corporate funds. Rivera also claims that younger male employees who performed similar duties earned higher salaries and bonuses than she did. According to Rivera, after she filed the EEOC charge, the harassment increased and became so unbearable that she was forced to resign.[2]

In summary judgment, Defendant argues that the evidence on record proves that Rivera's salaries, bonuses, and benefits were equal or higher than those of younger male employees. It also maintains that Rivera lacks sufficient evidence to support the remaining discrimination and retaliation claims for hostile work environment and constructive discharge. Rivera opposes summary judgment relying heavily on her post-discovery affidavit.

---

[2] In the complaint, Rivera also alleges that Medina increased her functions and duties, imposed unreasonable deadlines, and demanded higher sales' numbers than it demanded from younger male employees. See Docket # 1, ¶ 18. The claims are waived, however, because Rivera did not address them in her opposition to Defendant's motion for summary judgment.

**II.     Standard of Review**

Summary judgment is appropriate only if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if a "reasonable fact-finder could resolve in favor of either party and a material fact is one that could affect the outcome of the case." Flood v. Bank of Am. Corp., 780 F.3d 1, 7 (1st Cir. 2015). At this stage, it is axiomatic that courts "may not weigh the evidence," Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir. 1994), and must construe the record in the "light most flattering" to the nonmovant. Soto-Padró v. Public Bldgs. Authority, 675 F.3d 1 (1st Cir. 2012). A court must similarly resolve all reasonable inferences in favor of the non-moving party. Tolan v. Cotton, 134 S.Ct. 1861, 1863 (2014) (per curiam).

Once the movant properly configures a summary-judgment motion, the burden shifts onto the nonmovant—or "the party who bears the burden of proof at trial," Geshke v. Crocs, Inc., 740 F.3d 74, 77 (1st Cir. 2014)—to "point to competent evidence and specific facts to stave off summary judgment." Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011). So the nonmovant cannot rest on conclusory allegations and improbable inferences. See Advanced Flexible Circuits, Inc. v. GE Sensing & Inspection Technologies GmbH, 781 F.3d 510, 516 (1st Cir. 2015). Neither "effusive rhetoric," Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997), nor "arguments woven from the gossamer strands of speculation and surmise," RTR Technologies, Inc. v. Helming, 707 F.3d 84, 93 (1st Cir. 2013), suffice to forestall the entry of summary judgment. Failure to shoulder this burden "allows the summary judgment engine to operate at full throttle." Lawton v. State Mut. Life Assur. Co., 101 F.3d 218, 223 (1st Cir. 1996).

### III. Applicable Law Analysis

The ADEA makes it illegal for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Similarly, Title VII prohibits discrimination based on an individual's race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e-2 (a)(1). "The analytical framework for ADEA discrimination and retaliation cases was patterned after the framework for Title VII cases, and [the First Circuit's] precedents are largely interchangeable." Fennell v. First Step Designs, Ltd., 83 F.3d 526, 535, n. 9 (1st Cir. 1996) (citing Hazel v. U.S. Postmaster General, 7 F.3d 1, 3–4 (1st Cir. 1993)).

Here, Rivera alleges that Medina discriminated against her on account of her age and sex. Specifically, she claims that Medina paid her less than younger male employees, and subjected her to a hostile work environment. Rivera also claims that she was subjected to retaliation in the form of an increased hostility that culminated in her involuntary resignation. The Court addresses each claim sequentially.

a. Disparate treatment in wages

The Court need not delve too much into Rivera's claim that she earned lower salaries and bonuses than her younger male counterparts because the evidence on record refutes this claim.

From 2008 until her resignation, Rivera was the second-highest paid employee at Medina. Her salary was superseded only by Medina's General Manager, Lizette Cortés, who is undisputedly higher in the corporate hierarchy. This is evinced by a sworn declaration from Cortés and the W-2 forms (tax withholding statements), showing the salaries of all of Medina's employees from 2007 to 2013. Rivera has the audacity to challenge this direct evidence only with her deposition testimony where she said that three male employees, at different and unspecified points in time, told her

that they earned higher wages than she did. The Court, of course, disregards this testimony as classic hearsay, inadmissible at the summary judgment stage. See Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990) ("Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment"). With nothing else to support this claim, it must be dismissed. The Court thus proceeds to tackle Rivera's hostile work environment claim.

      b. Hostile Work Environment

Both the ADEA and Title VII provide a cause of action for employment discrimination based on a hostile work environment theory. See O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001) (Title VII); Collazo v. Nicholson, 535 F.3d 41, 44 (1st Cir. 2008) (ADEA). To sustain this type of claim, a plaintiff must prove that "that [her] workplace was 'permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of ... [her] employment and create an abusive working environment.'" Colón-Fontánez v. Municipality of San Juan, 660 F.3d 17, 43 (1st Cir. 2011) (quoting Quiles–Quiles v. Henderson, 439 F.3d 1, 7 (1st Cir. 2006)). "[R]udeness or ostracism, standing alone, usually is not enough to support a hostile work environment claim." Carmona-Rivera v. Puerto Rico, 464 F.3d 14, 19 (1st Cir. 2006) (quoting Noviello v. City of Boston, 398 F.3d 76, 92 (1st Cir. 2005)). This standard is sufficiently demanding to ensure that federal anti-discrimination laws do not become a general civility code for the workplace. See Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).

To be actionable, the harassment must be "objectively and subjectively offensive," Noviello, 398 F.3d at 92 (quoting Faragher, 524 U.S. at 787), and directed at an employee "because of a characteristic protected by a federal anti-discrimination statute." Quiles-Quiles, 439 F.3d at 7-8. In making this assessment, courts consider the totality of the circumstances including "the severity of the conduct; its frequency; and

whether it unreasonably interfered with the victim's work performance." Colón-Fontánez, 660 F.3d at 44.

Rivera asserts that Medina engaged in actionable harassment by making derogatory and discriminatory comments regarding her age; screaming at her using foul language; threatening her with termination; and falsely accusing her of being involved in a fraud scheme involving misappropriation of corporate funds. In support of these allegations, Rivera proffers only a post summary judgment statement under penalty of perjury,[3] whose relevant paragraphs read as follows:

3. Mr. Pepín Medina, Mr. Eduardo Medina, and Lissette Cortés, since approximately June 2011, up until the date in which I was forced to resign, almost on a daily basis, told me that I was old and useless and worthless; that I was old and slow; that I was old and should seek social security benefits; they also referred to me as "vieja"; that I was old and could not perform the functions and duties of my position and should resign and leave before being discharged.

4. Eduardo and Pepín Medina, since approximately June 2011, up until the date in which I was forced to resign, yelled and screamed to me and insulted me, up to the point in which I felt physically

---

[3] In its reply, Defendant asks the Court to strike this affidavit pursuant to the sham affidavit doctrine. Under this doctrine a party that "has given clear answers to unambiguous questions in discovery…cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, unless there is a satisfactory explanation of why the testimony [has] changed." Escribano-Reyes v. Prof'l Hepa Certificate Corp., 817 F.3d 380, 386 (1st Cir. 2016) (quotations and citations omitted). But as Rivera correctly points out, there are no inconsistencies between her deposition testimony and her affidavit. Rivera posits that the affidavit should stand because its content pertains to allegations that were not addressed by either Defendant's or Plaintiff's counsel during her deposition, see Docket # 71, pp. 5-11. Defendant counters that the affidavit should nevertheless be stricken because Rivera's counsel had ample opportunity to address these allegations during her deposition but chose not to do so. See Docket # 63, p. 14.

Defendant's argument has some appeal, particularly in light of the First Circuit's statement in Escribano-Reyes that "[the plaintiff] cannot blame opposing counsel for his failure to marshal the evidence he required." 817 F.3d at 387. But in affirming the District Court's order striking the post-discovery affidavit and imposing economic sanctions to the plaintiff's attorney—who is also Rivera's attorney in this case—the First Circuit also stressed that the plaintiff did not explain why his affidavit was inconsistent or why he failed to describe certain discriminatory acts in his deposition despite being given the opportunity to do so. Id. That is not the case here. Nevertheless, the Court need not decide whether Rivera's affidavit should be disregarded as a sham because, even accepting it, it is insufficient to block summary judgment.

       threatened, as if they were going to hit or slap me, due to the gestures they made towards me. However, they did not engage in this type of conduct against male employees.

5.     Eduardo and Pepín Medina, and Cortés, falsely accused me of being involved in a scheme of fraud and illegal misappropriation of the company's monies, even though such accusations were false.

Docket # 49-4, p. 1.

Defendant's motion for summary judgment hinges on whether the statements in Rivera's affidavit are sufficient to show that she was subjected to a discriminatory hostile work environment. They are not.[4]

Here, the distinction "between 'specific facts' and 'mere allegations' is important." Velázquez-García v. Horizon Lines Of Puerto Rico, Inc., 473 F.3d 11, 17 (1st Cir. 2007). It is true that a "party's own affidavit, containing relevant information of which he has first-hand knowledge, may be self-serving, but it is nonetheless

---

[4] The Court is troubled with the recurrent litigation strategy employed by attorney Escanellas of relying almost exclusively on post-discovery affidavits in opposing motions for summary judgment. See Reyes v. Prof'l Hepa Certificate Corp., 86 F. Supp. 3d 79, 83 (D.P.R. 2015) (collecting cases), aff'd sub nom., 817 F.3d 380 (1st Cir. 2016). Most worrisome is that the wording used to describe the comments in these affidavits is very similar, if not identical, in the myriad cases involving different plaintiffs and defendants. See e.g. Marrero v. Schindler Elevator Corp., 494 F. Supp. 2d 102, 110 (D.P.R. 2007) ("[the plaintiff] declared in his affidavit that Torres would refer to him as *'viejo,' 'viejito,' 'viejo pendejo*,'… [this] behavior was '*constant*' and '*on a daily basis.*'"); Colón v. San Juan Marriott Resort & Stellaris Casino, 600 F. Supp. 2d 295, 315–16 (D.P.R. 2008) ("comments that Colon would have to be *discharged because of her complaints*… were said *constantly*") ("Matías's assertion in his affidavit that Cintrón made these comments '*constantly, on a daily basis*'… directly contradicts his deposition testimony."); Villegas-Reyes v. Universidad Interamericana de P.R., 476 F. Supp. 2d 84, 91 (D.P.R. 2007) (She declared in her affidavit that Díaz would refer to Villegas as "vieja," "anciana," and "abuela," and otherwise told Villegas that *she was old and should retire*… such behavior was "*constant*" and "*on a daily basis*."; See also Quiles-Marcucci v. Coop. de Ahorro y Credito de Juana Diaz, Inc., Civil No. 08-1913 JAF, 2009 WL 1941219, at *5 (D.P.R. June 30, 2009) ("Marcucci asserts in her sworn statement that Milagros Quiles *threatened her daily with termination due to her illness*."); Id., Docket # 19-1, ¶¶ 22, 26 ("Valedón constantly… told me that I was *old and worthless*, and that I was *old and slow*"…"Milagros Quiles, constantly, *on a daily basis*…, told me that *I was going to be discharged because I was old and sick*…. and also d*ue to my requests for a reasonable accommodation*…[and] *because of my discrimination complaints*"); Fernández-Ocasio, 94 F. Supp. 3d at (D.P.R. 2015) ("plaintiff was '*good for nothing*' because she said she was in pain and *should apply for social security*"); Escribano-Reyes, 817 F.3d at 387 (three of the defendant's officers "told [the plaintiff] that they did not want [him] working with them, *due to the discrimination charge file[d]*, and *also because [he] was old and sick* and was *useless due to the requests for reasonable accommodation made*").

competent to support or defeat summary judgment." Id. at 17-18. Yet, "affidavits that 'merely reiterate allegations made in the complaint, without providing specific factual information made on the basis of personal knowledge, are insufficient." Id. (quoting Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 53 (1st Cir. 2000)); see also Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 6 (1st Cir. 1998) ("The object of [former] [Fed. R. Civ. P. 56(e)] "is not to replace conclusory allegations of the complaint… with conclusory allegations of an affidavit") (parenthetically quoting Jones v. Merchants Nat'l Bank & Trust Co. of Indianapolis, 42 F.3d 1054, 1059 (7th Cir. 1994)). That is the case here. Rivera's statement is virtually identical to the allegations in the complaint. Compare Docket # 1, ¶¶ 20, 23, 24 with Docket # 49-4, ¶¶ 3-5.

Rivera's allegation that three of Medina's officers, "almost on a daily basis," made derogatory comments against her, without providing context, specific dates, the precise words used, or naming the specific person involved in each instance, is too vague to satisfy the summary judgment standard. See e.g. Pérez v. Volvo Car Corp., 247 F.3d 303, 316 (1st Cir. 2001) ("Statements predicated upon undefined discussions with unnamed persons at unspecified times are simply too amorphous to satisfy the requirements of Rule 56(e) even when proffered … by one who claims to have been a participant"). Even taking as true the alleged frequency of the comments, the remarks themselves (that Rivera was old, slow, useless, worthless, and that she should seek social security benefits) are "too mild to form the basis of a hostile work environment claim." see Villegas-Reyes v. Universidad Interamericana de P.R., 476 F. Supp. 2d 84, 91 (D.P.R. 2007) (finding that referring to the plaintiff as "anciana," "vieja," "abuela," and telling her that "she was too old and should retire" was insufficient to maintain a hostile work environment claim); Marrero v. Schindler Elevator Corp., 494 F.Supp.2d 102, 110 (D.P.R.2007) (finding that calling the plaintiff "viejo," "viejito," and "viejo pendejo" "on a daily basis" are not sufficient for a hostile work environment claim);

Fernández-Ocasio v. WalMart Puerto Rico Inc., 94 F. Supp. 3d 160, 178 (D.P.R. 2015) (remarks that the plaintiff "'was good for nothing' because she said she was in pain and should apply for social security," while "insensitive and out of line," were insufficient to sustain a hostile work environment claim under First Circuit precedent).

The other statements in Rivera's affidavit fare no better. She states that her supervisors' screams, insults, and physical gestures while addressing her, were severe enough to make her feel humiliated and physically threatened. But Rivera does not even say which were the insulting words used and she provides no description of the allegedly intimidating gestures by Medina's officers. Neither does she attempt to explain the contours of the alleged fraud accusation. Simply put, the lack of details giving context to her statements makes it impossible for the Court to find that "a reasonable person" would have felt physically threatened or humiliated as required to support a hostile work environment claim. See Noviello, 398 F.3d at 92.

Moreover, even if Rivera's affidavit was deemed sufficient to prove that the alleged harassment was severe enough, she would also have to prove that it was directed at her either because of her age or motivated by her gender. See Quiles-Quiles, 439 F.3d at 7-8 ("an employee claiming harassment must demonstrate that the hostile conduct was directed at him because of a characteristic protected by a federal anti-discrimination statute"). Simply saying that Medina's officers "did not engage in [harassment] against male employees" will not do. Rather, she had to provide evidence of the circumstances under which she was harassed and compare it with evidence of like circumstances involving similarly situated younger or male employees who were not subjected to harassment. Rivera has provided neither. Her hostile work environment claims under Title VII and the ADEA are, therefore, dismissed with prejudice. The Court turns to Rivera's retaliation claim.

c. Retaliation

Both the ADEA's and Title VII's anti-retaliation provisions prohibit employers from discriminating against any employee because such individual opposed discriminatory practices or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation" under any of these anti-discrimination statutes. 29 U.S.C. § 623 (d); 42 U.S.C. § 2000e-3(a). Where, as here, there is no direct evidence of retaliation, a plaintiff must first establish a *prima facie* showing that she: (1) engaged in protected conduct; (2) suffered an adverse employment action; and (3) a causal connection between the protected conduct and the adverse employment action. See Soto-Feliciano v. Villa Cofresi Hotels, Inc., 779 F.3d 19, 30 (1st Cir. 2015) (ADEA); Velázquez-Ortiz v. Vilsack, 657 F.3d 64, 72 (1st Cir. 2011) (Title VII).

Rivera also grounds her retaliation claim on a hostile work environment theory. To this claim, the Court applies roughly the same standard applicable to her substantive hostile work environment claim, albeit with a minor difference. Retaliatory harassment need not alter the conditions of employment; rather, it must be severe enough to dissuade a reasonable worker "from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 54 (2006). Still, "[t]he alleged retaliatory action must be material, producing a significant, not trivial, harm." Carmona-Rivera v. Puerto Rico, 464 F.3d 14, 20 (1st Cir. 2006). "[P]etty slights and minor annoyances will not normally create such deterrence." Id.

Undoubtedly, Rivera engaged in protected activity by filing the EEOC charge. The Court, however, agrees with Defendant that Rivera did not proffer sufficient evidence of a materially adverse employment action taken in retaliation to that activity.

Once again, Rivera relies heavily on her sworn declaration. The affidavit states that after Rivera filed the EEOC charge on August 2013, Pepín Medina, "on a daily basis," threatened her with termination. Docket # 49-4, ¶ 6. Rivera reiterates that Pepín Medina humiliated her and screamed at her making "gestures" "as if he was going to physically attack [her]." Id. She also claims that after the EEOC charge, Pepín Medina removed her "duties of importance," assigned her "clerical functions," and told her that she "was not trustworthy." Id. ¶ 10. According to Rivera, three days after she returned to work, she required medical attention. At that point, it appears that Rivera's counsel referred her to the San Juan Capestrano Medical Facility, where she was diagnosed with major depression and partially hospitalized for ten days.[5] She also began receiving psychiatric treatment with Dr. Héctor Cott. Id., ¶¶ 7 & 8. Immediately upon returning to work on September 25, Rivera says, Pepín Medina referred to her "with foul language" and resumed the alleged harassment. Id., ¶ 9. Ultimately, Rivera posits that due to the hostile work environment and following her psychiatrist's recommendation, she was forced to resign. Id., ¶ 11.

Rivera's retaliation claim ultimately fails for substantially the same reasons that doomed her substantive discrimination claim for hostile work environment. Her affidavit is basically a reiteration of the allegations of the complaint, compare Docket # 1, ¶¶ 31-36 with Docket # 49-4, ¶¶, 6-11, and lacks the necessary specificity to support the charge.

The statement that Pepín Medina threatened Rivera with termination "on a daily basis…due to the discrimination charge filed" is nothing more than a conclusory allegation. See e.g. Capezano v. ARCOR SAIC, 743 F. Supp. 2d 71, 79–80 (D.P.R. 2010) (allegations that the "defendant's officers were constantly making discriminatory comments and threatened [the plaintiff] with termination, due to his

---

[5] According to the medical records, it was Rivera's counsel who referred her to the San Juan Capestrano Hospital & Treatment Clinic. See Docket # 49-6.

complaint about defendant's products' lack of compliance with FDA regulations" were deemed conclusory and insufficient to survive a motion to dismiss). The statement lacks context and it is not clear as to what exactly Pepín Medina said to Rivera. The same is true regarding all of the other remarks in her declaration.

As with her substantive discrimination claim, Rivera says that she felt humiliated and even frightened by Pepín Medina's screams and "physical gestures." But absent some context including the words actually said and, at the very least, some description of the alleged "physical gestures," the Court is in no position to draw an inference that, from an objective standpoint, a reasonable worker would have felt humiliated and threatened. Rivera also says that Pepín Medina referred to her with "foul language." Again, without stating the specific words that Pepín Medina allegedly used, it is impossible to characterize them as "foul language." See Wallace v. Texas Tech University, 80 F.3d 1042, 1048 n. 6 (5th Cir. 1996) (assertion that "African–American players were referred to and addressed with hostile and profane language whereas white players did not receive such treatment" was held to be vague and conclusory).

Her claim that Pepín Medina removed her "duties of importance" and assigned her "clerical functions" says nothing. For the Court to even consider this allegation, Rivera had to proffer evidence showing what her regular tasks were before and after the alleged retaliatory action. See e.g. Fernández-Ocasio, 94 F. Supp. 3d at 172. There is no such evidence on record.

Rivera also relies on the fact that she was "partially hospitalized," diagnosed with major depression, and that her treating psychiatrist recommended her not to return to work. "But this is evidence of subjective offense at best," Bhatti v. Trustees of Boston Univ., 659 F.3d 64, 74 (1st Cir. 2011), and under the applicable standard, Rivera was also required to present evidence that the harassment was objectively offensive, "[such] that a reasonable person would find hostile or abusive." Noviello,

398 F.3d at 92. In sum, the evidence on record is insufficient to establish that Rivera suffered from a retaliatory adverse employment action.

Even if Rivera had presented sufficient evidence of a hostile work environment, her retaliation action on this front would nevertheless fail because, the statements in her affidavit reveal that "[t]he allegedly retaliatory conduct was merely the continuation of the conduct giving rise to the complaints." McDonnell v. Cisneros, 84 F.3d 256, 259 (7th Cir. 1996); accord Air Sunshine, Inc. v. Carl, 663 F.3d 27, 37 (1st Cir. 2011).

Rivera says that the harassment began on June 2011, long before she filed the EEOC charge. And although proof of intensified harassment may support a retaliation claim, see Quiles-Quiles, 439 F.3d at 9, there is no such evidence on record. To the contrary, in describing the harassing conduct after she filed the EEOC charge on 2013, Rivera uses the same conclusory allegations she uses to describe the harassment that she allegedly had been enduring since June 2011. To the extent that nothing changed after Rivera filed the EEOC charge, the harassment that she might have endured thereafter would not have dissuaded a reasonable worker "from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co., 548 U.S. at 64.

Finally, because Rivera's retaliatory hostile work environment claim fails, her claim for retaliatory constructive discharge must fail as well. See Hernández-Torres v. Intercontinental Trading, Inc., 158 F.3d 43, 48 (1st Cir. 1998). Rivera's retaliation claims under the ADEA and Title VII are dismissed with prejudice.

    d. Supplemental Claims

Defendant also moves to dismiss Rivera's supplemental claims under several of Puerto Rico's antidiscrimination statutes. Specifically, Rivera brought claims under the Commonwealth's general antidiscrimination statute, Law No. 100 of June 30, 1959, P.R. Laws Ann. tit. 29, §§ 146 *et seq.* (Law 100); the statute specifically

prohibiting sex based discrimination, Law 69 of July 6, 1985, P.R. Laws Ann. tit. 29, §§ 1321, *et seq*. (Law 69); and Puerto Rico's anti-retaliation statute, Law No. 115 of December 20, 1991, P.R. Laws Ann. tit. 29, § 194a (Law 115). She also brought a constructive discharge claim under Law No. 80 of May 30, 1976, P.R. Laws Ann. tit. 29, §§ 185a-185m (Law 80), which mandates compulsory severance pay for employees that are terminated without cause.[6]

When deciding whether to exercise jurisdiction over state law claims, a district court must exercise "informed discretion," weighing "concerns of comity, judicial economy, convenience, and fairness." Redondo Const. Corp. v. Izquierdo, 662 F.3d 42, 49 (1st Cir. 2011). "The preferred approach is pragmatic and case-specific." Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 257 (1st Cir. 1996). Here, not only all claims arise from the same core of facts, see Tomaiolo v. Mallinoff, 281 F.3d 1, 11 (1st Cir. 2002), but also the litigation has "matured well beyond its nascent stages," discovery is closed, the summary judgment record is complete, and the federal and state claims are interconnected. Roche, 81 F.3d at 257. Considering this, and that Rivera concedes that her discrimination and retaliation claims under the ADEA and Title VII are virtually identical to her claims under Puerto Rico law, see Docket # 49, pp. 2, 5, &16, "powerful interests in both judicial economy and fairness" tug in favor of exercising jurisdiction. Redondo Const. Corp, 662 F.3d at 50.

As applied to claims based on age discrimination, the First Circuit has said that Law 100 "differs from the ADA only with respect to how the burden-shifting framework operates." Dávila v. Corporación De Puerto Rico Para La Difusion Publica,

---

[6] Rivera also brought a claim under Law 17, which prohibits sexual harassment defined as "any type of undesired sexual approach, demand for sexual favors and any other verbal or physical behavior of a sexual nature." P.R. Laws Ann. tit. 29, § 155b. Although neither party discussed this claim in their briefs, the Court dismisses it *sua sponte* because neither the complaint, nor the summary judgment record contains allegation of sexual harassment as defined under Law 17. See Villegas-Reyes v. Universidad Interamericana de P.R., 476 F. Supp. 2d 84, 92 (D.P.R. 2007) ("*sua sponte* dismissal for failure to state a claim is warranted where "it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile." (quoting Chute v. Walker, 281 F.3d 314, 319 (1st Cir. 2002).

498 F.3d 9, 18 (1st Cir. 2007) (citation ommited). But "[o]n the merits, age discrimination claims asserted under the ADEA and under Law 100 are coterminous." Id. Because Rivera was unable to make a *prima facie* showing of age discrimination under the ADEA, her age discrimination claims under Law 100 must also fail. The same follows for her sex discrimination claim under Title VII, see Saliceti-Valdespino v. Wyndham Vacation Ownership, 990 F. Supp. 2d 159, 162 (D.P.R. 2014) (Dismissing the plaintiff's claims under Laws 100 and 69 after having dismissed his Title VII claims noting that courts have "recognized that Title VII hostile work environment claims brought under Law 17, Law 69, and Law 100 are essentially the same"), and her retaliation claims under Law 115. See Vélez v. Janssen Ortho, LLC, 467 F.3d 802, 809 (1st Cir. 2006) ("Law 115 requires the same prima facie showing of an 'adverse employment action' as Title VII") and Rivera Rodríguez v. Sears Roebuck de P.R., Inc., 423 F.3d 379, 383 n. 2 (1st Cir. 2005) (affirming dismissal of the plaintiff's claims under Law 100 and Law 115 for the same reasons as their federal ADEA counterparts).

Lastly, Rivera's claim for wrongful termination under Law 80 is also a no-go. Law 80 requires employers to provide a mandatory severance pay to at-will employees who are discharged without just cause. Ruiz–Sanchez v. Goodyear Tire & Rubber Co., 717 F.3d 249, 254 (1st Cir. 2013). Article 8 creates a presumption that all dismissals are without cause and shoulders the employer with the burden of proving, by a preponderance of the evidence, just cause for the dismissal. See P.R. Laws Ann. tit. 29, § 185k; Rivera Figueroa v. The Fuller Brush Co., 180 D.P.R. 894, 906-907 (2011). But this presumption does not arise where a plaintiff proceeds under a constructive discharge theory. In these cases, the presumption is activated only after the employee provides sufficient evidence that his resignation was involuntary. See id. at 979. As discussed above, Rivera failed to proffer sufficient evidence to prove that she was subject to a hostile work environment and, as such, she cannot show that her

resignation was involuntary. Rivera's claim for wrongful termination under Law 80 is doomed.

### IV. Conclusion

Because Rivera's allegations of adverse employment actions are supported only by hearsay evidence and conclusory statements in her affidavit, she cannot establish a *prima facie* case of discrimination or retaliation under the ADEA, Title VII, or Puerto Rico's antidiscrimination statutes. Also, because she was not terminated, her Law 80 claim fails as well. Defendant's motion for summary judgment is, therefore, granted.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 11th day of January, 2017.

*s/ Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge